### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS DEAN WELSH,            :

                    Petitioner    :

              v.                  :

MARK GARMAN,                      :

              Respondent          :

CIVIL ACTION NO. 1:20-0329

(JUDGE MANNION)

### MEMORANDUM

Petitioner, Douglas Dean Welsh, an inmate currently confined in the Rockview State Correctional Institution, Bellefonte, Pennsylvania, files the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his convictions and sentence imposed in the Court of Common Pleas of Columbia County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

### I.   Background

The procedural and factual background underlying Welsh's conviction and sentence is adopted from the November 21, 2019 Memorandum Opinion of the Pennsylvania Superior Court, addressing Petitioner's appeal from the denial of his Post Conviction Relief Act (PCRA) petition, and is as follows:

> In September 2010, a jury convicted Welsh of aggravated indecent assault, corruption of minors, indecent assault and criminal conspiracy, arising out of his myriad sexual offenses committed against a minor female and her younger brother, over

several years.[1] Prior to sentencing, the Commonwealth provided Welsh Notice of its intent to seek imposition of a mandatory minimum sentence of life in prison, pursuant 42 Pa.C.S.A. §9718.2(a)(2).[2] Moreover, due to the nature of the charges, the trial court ordered Welsh to undergo an assessment by the Sexual Offenders Assessment Board to determine whether he should be classified as an SVP under the version of Megan's Law then in effect, Megan's Law III, 42 Pa.C.S.A. §9795.1 *et seq*. (expired). At the conclusion of the February 22, 2011 sentencing/SVP hearing, the trial court imposed an aggregate sentence of life in prison.[3] Additionally, the court determined that Welsh met the definition of an SVP, and informed him that he was required to register and report as a Tier III sexual offender for his lifetime.

On direct appeal, this Court affirmed Welsh's judgment of sentence, after which our Supreme Court denied allowance of appeal. ***See Commonwealth v. Welsh***, 60 A.3d 562 (Pa. Super. 2012) (unpublished memorandum), ***appeal denied***, 76 A.3d 540 (Pa. 2013).

---

[1] Evidence introduced at trial established that Welsh committed sexual acts upon the victim, A.D., and conspired with his co-defendant, Eugene S. Makara, to rape A.D. on several occasions from 2002 to 2007 while she was between six and twelve years of age. (Doc. 15-1 at 7). Makara was tried jointly with Welsh and was convicted of several offenses. Id.

[2] Because Welsh was a "third strike" sexual offender due to his prior criminal record, a mandatory minimum sentencing statute applied: 42 Pa.C.S.A. §9718.2(a)(2) (providing that "[w]here the person had[,] at the time of the commission of the current offense[,] previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9799.14 [(governing sexual offenses and tier system),] or equivalent crimes under the laws of this Commonwealth in effect at the time of the commission of the offense …, the person shall be sentenced to a term of life imprisonment… .").

[3] The court imposed two separate terms of life in prison, one as to each of the victims.

On August 15, 2014, Welsh filed the instant, timely, *pro se* PCRA Petition, his first. In response, the PCRA court appointed Welsh counsel, who filed a Supplement to the PCRA Petition. Following a procedural history not relevant to this appeal, the PCRA court conducted a hearing on December 9, 2016. By an Opinion and Order entered on February 21, 2017, the PCRA court denied Welsh's PCRA petition.

Welsh timely filed a *pro se* Notice of Appeal, *nunc pro tunc*.[4] The PCRA court ordered Welsh to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Welsh timely complied.

On appeal, Welsh raises the following questions for our review:

I.  Whether the PCRA court erred and abused it[]s discretion in illegally sentencing [Welsh] to two life sentences pursuant to 42 Pa.C.S.A. §9718, and/or failing to correct [Welsh's] two illegal life sentences pursuant to [section] 9718, when raised in a timely PCRA petition?

II.  Whether the PCRA court erred and abused it[]s discretion in dismissing [Welsh's] PCRA Petition[,] where all prior counsel(s) rendered ineffective assistance of counsel[,] in violation of the Sixth Amendment of the United States Constitution?

III. Whether the retroactive application of [SORNA] to [Welsh] is illegal and violates both the state and federal Constitutions['] *ex post facto* clauses and/or[,] in the alternative[,] whether the SORNA statute's requirement that [Welsh] register under a formal sexual offender registration law of this Commonwealth

---

[4] In response to a *per curium* Order that this Court issued to the PCRA court, the court explained that Welsh had requested to represent himself. The court further stated that it had conducted a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), and determined that Welsh was waiving his right to counsel knowingly, intelligently, and voluntarily. ***Cf. Commonwealth v. Padden***, 783 A.2d 299, 308 (Pa. Super. 2001) (stating that, absent a waiver pursuant to ***Grazier***, a first-time *pro se* PCRA petitioners is entitled to the benefit of the assistance of counsel on appeal).

(Megan's Law III) violates [Welsh's] right to due process and constitutes an illegal sentence?

(Doc. 15-1 at 46-48). By Memorandum Opinion dated November 21, 2019, the Superior Court affirmed Welsh's convictions but remanded for modification of his sentence, eliminating his designation as a sexually violent predator under the Pennsylvania's Sex Offender Registration Notification Act. Id. On January 23, 2020, the sentencing court issued an order modifying Welsh's sentence in accordance with the Superior Court's directive. (Doc. 15 at 32).

Petitioner filed this timely federal habeas corpus petition in which he raises various issues for federal habeas review. (Docs. 1, 11).

## II.   **Standard of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States

....

- 4 -

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994) (citations omitted).

- 5 -

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. §2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'." Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 280 (2016) (*en banc*) (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (explaining that the "contrary to" and "unreasonable application of" clauses of §2254(d)(1) have independent meaning). A state-court adjudication is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States" §2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Williams, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under §2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case'." Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it "'was objectively unreasonable'." Id. (quoting Williams, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." Richter, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer, supra, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, §2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under §2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Id. at 102.

The standard of review set forth at §2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" Burt v. Titlow, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." Dennis, 834 F.3d at 281 (quoting §2254(d)(2) and citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached

a different conclusion in the first instance'." Titlow, 571 U.S. at 18 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)); see Rice v. Collins, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. Wood, 558 U.S at 301 (quoting Collins, 546 U.S. at 341-42).

If the Superior Court did not adjudicate a claim on the merits, the Court must determine whether that was because Petitioner procedurally defaulted it. If the claim is not defaulted, or if Petitioner has established grounds to excuse his default, the standard of review at §2254(d) does not apply and the Court reviews the claim *de novo*. See, e.g., Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at §2254(d) applies, the state court's factual determinations are presumed to be correct under §2254(e)(1) unless Petitioner rebuts that presumption by clear and convincing evidence. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the §2254(e)(1) presumption of correctness applies

regardless of whether there has been an 'adjudication on the merits' for purposes of §2254(d).") (citing Appel, 250 F.3d at 210).

Welsh's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## III.  Discussion

Petitioner raises various allegations of error across his forty-eight page petition and 100-page memorandum in support. (Docs. 1, 11). The Court addresses these claims as six separate claims with numerous sub parts.

### Claim One –  Sixth Amendment

Petitioner argues that his Sixth Amendment right to confrontation was violated when the trial court precluded him from cross-examining one of the victims, A.D., about prior sexual conduct with persons other than Welsh and Makara. (Doc. 1 at 9, Doc. 11 at 40-45). He claims that it was his defense that A.D. was lying and that the Court' decision denied him the ability to first and foremost present evidence that would establish his innocence, as well as "show a pattern and practice by A.D. of alleging that she was sexual[ly] abused by men to get what she wanted"; specifically, "to stay in foster care and not returned to her parents care where she had previously lived in

deplorable and unsafe conditions and establish that it would be impossible for her to have suffered the years of sexual abuse by numerous men as she claimed." Id.  Respondent contends that the state court properly excluded this evidence as not relevant because there was no evidence that A.D. had fabricated these other accusations and that the introduction of evidence of other allegations risked confusing the issues before the jury.

The aspect of the Sixth Amendment upon which Welsh bases this claim is the protection of an accused in a criminal prosecution "to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. The United States Supreme Court has recognized that this right "means more than being allowed to confront the witness physically." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (citing Davis v. Alaska, 415 U.S. 308, 315 (1974)). Specifically, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis, 415 U.S. at 315. However, as is the case with the Compulsory Process right, this does not mean that trial judges are precluded from imposing limits on the defense's cross-examination. It is well-established that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 678. The Court further observed in Van Arsdall that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 679 (citing Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original)). Thus, the question here is whether the state court's denial of Petitioner's request to cross-examine A.D. concerning other complaints of sexual assaults that she had made reflects a reasonable limitation based upon any of the concerns that the Supreme Court has suggested are legitimate bases.

Welsh initially argued in the trial court, and subsequently on direct appeal, that the evidence should have been admitted at trial under the doctrine of law of the case because it had been permitted at a pre-trial hearing before another judge. (Doc. 1 at 23). The Pennsylvania Superior Court rejected Petitioner's argument, pointing out that said doctrine only applies to issues previously addressed and decided in the litigation, citing Koppers Company, Inc., by its successor, Beazer East, Inc. v. Certain Underwriters at Lloyd's, London, 993 F.Supp. 358 (W.D. Pa. 1998), and that the applicability of the Rape Shield Law had not been raised, addressed or decided at the pre-trial hearing in question. (Doc. 15-1 at 11). The Superior

Court proceeded to address the applicability of the Rape Shield Law to the

proposed evidence offered by Welsh as follows:

> "The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity." **Commonwealth v. Johnson**, 638 A.2d 940, 942 (Pa. 1994) (citation omitted). Testimony that a victim had previously been sexually assaulted does not reflect on her reputation for chastity because being assaulted is not conduct of the victim. **Id.** Accordingly, "[it] would be illogical to conclude that the Rape Shield Law intended to prohibit this kind of testimony." **Id.** Relying on **Johnson**, Welsh asserts that the trial court erred by precluding him from introducing testimony regarding previous sexual assaults suffered by A.D.
>
> A review of the testimony at the pretrial motion hearing indicates that Welsh did use A.D.'s victimization by her relatives to attack her reputation for chastity. Counsel repeatedly asked A.D. about "having intercourse" with her father. N.T. Pretrial Motion Hearing, 9/10/08, at 38, 40-41, 60. Counsel asked her about "having sex" and "having intercourse" with her cousin, D.H. **Id**. at 59-61. Counsel asked A.D. about "having intercourse" with her uncle, S.D., **Id**. at 62, and whether she "had sex" or "intercourse," with her uncle, B.D. **Id**. at 61. Although A.D. was under the age of thirteen when these assaults occurred, and therefore was unable to consent to sexual activity, counsel questioned her in a way that implied she had voluntarily participated in these acts. After questioning A.D. about sexual activity with her father, cousin and two uncles, he asked, "Anybody else you have had intercourse with other than who I have talked about so far?" **Id**. at 62. Such questioning at the pretrial hearing was an attack on A.D.'s chastity that Appellant sought to continue at trial. This is the kind of situation that the Rape Shield Law was designed to prevent. **See Johnson, supra**.
>
> Furthermore, "[t]he Rape Shield Law is a bar to admission of prior sexual conduct involving a victim, whether it is consensual or the result of nonconsensual or assaultive behavior unless it has probative value which is exculpatory to the defendant."

**Commonwealth v. Boyles**, 595 A.2d 1180, 1186 (Pa. Super. 1991) (citation omitted). Here, the fact that A.D. may have been a victim of sexual assault by other individuals is not exculpatory as to Welsh, and therefore is of no probative value.

Welsh asserts that the trial court erred by using the Rape Shield Law to exclude relevant evidence showing A.D.'s bias. Brief of Appellant, at 23, The case he relies upon is inapposite. In **Commonwealth v. Black**, 587 A.2d 396 (Pa. Super. 1985), the defendant was charged with sexually assaulting his thirteen-year-old daughter. The defendant sought to admit evidence that his daughter was having a sexual relationship with her brother, which ended when the defendant forced the brother out of the house. After the defendant removed the brother from the house, the defendant's daughter raised the allegations of sexual abuse. Essentially, the defendant argued that his daughter was motivated to make false accusations against him in hopes of getting him out of the house so that she could continue having a sexual relationship with here brother. The trial court rejected the defendant's position that only by showing the sexual relationship between his daughter and her brother could the true extent of her bias against the defendant be revealed. On appeal, this Court reversed and remanded for a hearing to determine, "(1)whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative values of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Id.** at 401.

Appellant asserts that A.D. "told a prior counselor on videotape that she just wanted to get away from her father's house. A.D. then appeared before the jury and testified that she wanted to get away from . . . Welsh. Under the circumstances, the lower court erred in precluding the testimony." Brief of Appellant, at 24. The fact that A.D. wanted to leave a home where she had been abused by family members simply provides no motive for her to have later made allegations against Welsh. Accordingly, there is no link between the past victimization of A.D. and her motivation to seek retribution against the accused. Therefore, **Black** does

not support Welsh's position that evidence of A.D.'s sexual conduct with other individuals was relevant.

Welsh also asserts that the Rape Shield Law should not be used to exclude relevant evidence attacking credibility. Brief of Appellant, at 23. Here, the trial court allowed Welsh to elicit testimony from A.D. that she had been untruthful with forensic investigator Sherry Moroz when she told her that no one other than Welsh and Makara had touched her. N.T. Trial, 9/16/10, at 367-68. The court also permitted Sherry Moroz to confirm this during her testimony. N.T. Trial, 9/17/10, at 717-8. The jury had the opportunity to hear that A.D. was the victim of improper touching by individuals other than Welsh and Makara, and that she lied about it. Therefore, the trial court did permit Welsh to call into question A.D.'s credibility based on references to prior sexual conduct. Accordingly, Welsh is not entitled to relief on this claim.

(Doc. 15-1 at 13-16).

We do not find the state court's adjudication of this claim to reflect an unreasonable application of any United States Supreme Court authorities regarding the Confrontation Clause. While the "core" of the Confrontation Clause is the right to test the credibility of witnesses through cross-examination, see Davis v. Alaska, 415 U.S. 308, 315–16, (1974), the Supreme Court's decision in Delaware v. Van Arsdall, recognized that "[i]t does not follow ... that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). On the contrary, the Court in Van Arsdall also

specifically noted that trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id.[5] Our Court of Appeals suggests that courts assess whether the trial court's ruling "significantly inhibited" the defendant's right to inquire into the witness's "motivation in testifying." See United States v. Chandler, 326 F.3d 210, 219

---

[5] The Supreme Court in Van Arsdall found that the petitioner's Sixth Amendment right to confrontation had been violated and remanded the case for consideration by the state court of whether the error was harmless. Van Arsdall, 475 U.S. at 684. The case had been before the Court on direct appeal. At trial, an eyewitness testified to the defendant's presence at the crime scene in the time leading up to a murder. During cross-examination, defense counsel sought to impeach the witness by questioning him about the dismissal of an unrelated criminal charge that had been pending against him after he had agreed to speak with the prosecutor about the murder. Outside the presence of the jury, the witness acknowledged that the pending charge, for public drunkenness, had been dropped in exchange for his promise to speak with the prosecutor about the murder. The trial court, however, barred any cross-examination about that agreement, citing Delaware's version of Fed.R.Evid. 403. Id. at 676 & n. 2. The Court agreed with the defendant that the dismissal of the public drunkenness charge was a fact "that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony," and that because this fact concerned bias, it was central to assessing the witness's reliability. Id. at 677, 679. The Court found that by cutting off all inquiry into the possibility that the witness had a motive for favoring the prosecution in his testimony and was thus biased, the trial court violated the defendant's Confrontation Clause rights. Id. at 679.

(3d Cir.2003). If so, the court should then decide whether the constraints it imposed on the scope of the defendant's cross-examination fell within the "reasonable limits" that a trial court has the authority to establish in the exercise of its discretion. See id. Unlike the Black case that Welsh relies upon in his state court proceeding, there is no similar motivation for the victim in this case to have made false accusations against Welsh, as there was no representation by Welsh to A.D. that he was going to take any type of action against her or that he was going to report any of their sexual actions or activities.

Welsh was not deprived of the opportunity guaranteed to him by the Sixth Amendment to confront A.D., his accuser. The state court's restriction on the scope of cross-examination concerning unrelated accusations made by A.D. in other circumstances, which were not shown to relate to her motive to bring these allegations, was not unreasonable. Rather, the restriction was within the "wide latitude" permitted by Supreme Court jurisprudence, see Van Arsdall, 475 U.S. at 678, and warranted in light of the concern of harassment, prejudice, confusion of the issues, and relevance, as the prior complaints were not shown to bear upon A.D.'s motive in this case. We do not find Welsh to have established that the state court's limitation on the scope of his cross-examination of A.D. violated his Confrontation Clause rights, nor that the

state courts unreasonably applied Supreme Court case law when they rejected this claim. Therefore, we do not find this claim to warrant habeas relief.

### Claim Two – <u>Fourth Amendment</u>

Petitioner claims that his conviction was obtained in violation of the Fourth Amendment "where the information the Commonwealth used to support its search warrant of Petitioner's property was stale because it was based on three year old evidence." (Doc. 11 at 5). Petitioner's Fourth Amendment claim is not cognizable on federal habeas review.

It has long been settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see also Wallace v. Kato, 549 U.S. 384, 395 n.5 (2007). Even "[a]n erroneous or summary resolution" of a Fourth Amendment claim by the state court "does not overcome the bar" provided by Stone. Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).

This issue was raised in Welsh's Rule 1925 Statement and addressed in the trial court' Rule 1925 Opinion, following the filing of Welsh's direct

appeal and subsequently, addressed, in detail, by the Superior Court as follows:

> Welsh next asserts that the trial court erred by not dismissing all of the charges against him because the information supporting the search warrant for his property was stale. The trial court concluded that the issue was waived, and we agree. A review of the relevant sequence of events is necessary to explain the trial court's determination.
>
> In November 2007, Welsh and Makara were arrested after a search warrant was executed in their home. On January 25, 2008, the Commonwealth provided to counsel a copy of the application for a search warrant, along with an inventory of items seized during the search. Welsh filed an omnibus pre-trial motion on April 1, 2008, which sought, *inter alia*, permission to file a supplemental pre-trial motion. The pre-trial motion made no allegation that the information on which the search warrant was based was stale.
>
> Judge Naus held a hearing on the omnibus pre-trial motion on September 10, 2008. The court granted the defense motion to suppress certain undergarments found in the house, but held that counsel could object at trial to a bathing suit and other articles of clothing based on relevance. No objections were made to any other items obtained from the search.
>
> On September 19, 2008, Welsh filed a supplemental omnibus pretrial motion in which he raised the issue of staleness for the first time. At a hearing on October 28, 2008, the Commonwealth and the defense reached an agreement regarding the items obtained during the search that the Commonwealth would seek to admit at trial.
>
> At hearings held on May 6, June 24 and August 25, 2010 regarding outstanding motions and evidence to be presented at trial, Welsh did not raise the issue of the staleness of the search warrant. Following the August 25, 2010 hearing, Welsh filed several motions, none of which raised staleness of the warrant.

Welsh filed a motion *in limine* on September 3, 2010, which refers to the agreement between Welsh and the attorney for the Commonwealth specifying the seized items the Commonwealth would seek to admit at trial. In the motion, Welsh seeks to confirm the agreement because Assistant District Attorney Anthony McDonald, who entered into the agreement on behalf of the Commonwealth, was no longer involved in the case.

At trial, the only seized evidence that the Commonwealth sought to admit was "Item No. .10 — Assorted Sexual Items - creams, condoms, sexual toys." Motion *in limine*, 9/3/10, at 6. When the Commonwealth introduced these items at trial, Welsh objected, but not on the basis of staleness. The court admitted the items.

In his motion *in limine*, Welsh sought to "confirm the parties' agreement and that the Commonwealth will only attempt to offer testimony or evidence concerning [specified items]." **Id**. at Exhibit A. Based on this motion, the trial court determined that Welsh "abandoned or waived any pending claim that the probable cause information for the issuance of the Search Warrant was stale, thereby making the items seized subject to suppression." Trial Court Opinion, 6/7/11, at 5.

Based on our extensive review of the record, we conclude that the trial court neither committed an error of law nor abused its discretion in determining that the agreement between the Commonwealth and Welsh waived the issue of staleness. Accordingly, he is not entitled to relief on this issue.

(Doc. 15-1 at 16-18).

Welsh has not offered any reason why Stone's holding would not apply to his case. For example, Welsh has not shown that there was some "structural defect" in the state criminal process that prevented him from raising a pretrial Fourth Amendment challenge to the search warrant. See

Marshall, 307 F.3d at 181-82; Boyd v. Mintz, 631 F.2d 247, 250-51 (3d Cir. 1980). He has clearly had a full and fair opportunity to litigate this claim. Thus, because Welsh had an opportunity to fully and fairly litigate his Fourth Amendment claim in state court, this Court is barred from considering it on federal habeas review.

**Claim Three – <u>Imposition of two life sentences violates the First, Eighth and Fourteenth Amendments</u>**

Welsh was sentenced under 42 Pa.C.S. §9718.2, which imposes a mandatory sentence when there is a previous conviction of a sexual offense. (Doc. 15-1 at 29, Commonwealth v. Welsh, 519 MDA 2011 at 29 (Pa. Super. Aug. 8, 2012) (unpublished memorandum)). Welsh challenges the legality of his sentence, claiming that since the date of his sentencing, the United Sates Supreme Court decided Alleyne v. United States, 570 U.S. 99 (2013), "declaring mandatory minimum sentencing statues such as §9718, unconstitutional and void." (Doc. 11 at 57).  Petitioner raised this issue in both his direct appeal and in his PCRA petition. Id. In affirming the denial of Petitioner's PCRA petition, the Superior Court addressed this claim as follows:

> In his first issue, Welsh argues that the trial court's imposition of a mandatory minimum sentence of life in prison, pursuant to 42

Pa.C.S.A. §9718.2(a)(2),[6] was unconstitutional pursuant to **Alleyne v. United States**, 570 U.S. 99 (2013), and the Pennsylvania Supreme Court's subsequent decision in **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016).  See Brief for Appellant at 14-18.  We disagree.

This Court has explained the holding in **Alleyne** as follows:

> According to the **Alleyne** Court, a fact that increases the sentencing floor is an element of the crime.  Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt.  The **Alleyne** decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes **that do not pertain to prior convictions** constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.

**Commonwealth v. Watley**, 81 A.3d 108, 117 (Pa. Super. 2013) (en banc) (emphasis added; footnotes omitted); **see also Alleyne**, 570 U.S. at 111 n.1 (upholding the Supreme Court's prior holding in **Almendarez-Torres v. U.S.**, 523 U.S. 224 (1998), that the fact of a prior conviction does not need to be submitted to the jury and found beyond a reasonable doubt); **see also Commonwealth v. Golson**, 189 A.3d 994, 1001-02 (Pa. Super. 2018) (upholding imposition of a 25-year mandatory minimum sentence pursuant to 42 Pa.C.S.A. §9718.2, based upon a prior conviction).

In the instant case, the sentencing court applied mandatory minimum sentences under subsection 9718.2(a)(2), based upon Welsh's prior convictions of qualifying offenses under that statute.  Therefore, Welsh's sentence is not illegal and does not

---

[6] Welsh does not dispute that he was previously convicted of qualifying offenses under subsection 9718.2(a)(2), including involuntary deviate sexual intercourse and indecent assault.

run afoul of **Alleyne**.[7] **See** Watley, **supra**.   Moreover, the Pennsylvania Supreme Court has held that **Alleyne** is not applicable retroactively to cases on PCRA review. **Commonwealth v. Washington**, 142 A.3d 810, 820 (Pa. 2016). Accordingly, Welsh's first issue entitles him to no relief.

The Court finds the Superior Court's decision did not unreasonably apply Supreme Court case law when they rejected this claim. In Alleyne, the United States Supreme Court held that facts that increase mandatory minimum sentences must be submitted to the fact-finder and determined beyond a reasonable doubt. Id. at 103. The Pennsylvania Supreme Court clarified Alleyne's application to mandatory sentences based on previous convictions in Commonwealth v. Resto, 179 A.3d 18 (Pa. 2018), when it said, "[A] conviction returned by a jury to which a mandatory minimum sentence directly attaches is not the same as an aggravating fact that increases a mandatory minimum sentence.... [S]uch a conviction is itself a contemporaneous jury determination, and the concern of Alleyne is with sentencing enhancements tied to facts to be determined by a judge at sentencing." Id. at 21. Furthermore, this Court notes that under prevailing federal jurisprudence, prior convictions are not treated as a type of fact implicating Alleyne. See Com. V. Bragg, 133 A.3d 328, 332-33 (Pa. Super.

---

[7] Further, Welsh's reliance on **Wolfe**, **supra**, is misplaced because that case did not involve the imposition of a mandatory minimum based on a prior conviction, but rather, the age of the victim.

2016) (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)), aff'd 169 A.3d 1024 (2017) (*per curiam*). Thus, this Court finds no merit to Petitioner's claim that his sentence is illegal pursuant to Alleyne.

Welsh's second challenge to his sentence is that his life sentences violate the *ex post facto* prohibition of Article I, Section 9 of the U.S. Constitution. (Doc. 11 at 54-58).

The Pennsylvania Superior Court addressed this claim as follows:

Welsh's sole argument is that section 9718.2 violates the *ex post facto* prohibition set forth in the United States Constitution and the Pennsylvania Constitution.

The ex post facto prohibition forbids the Congress and the States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." **Weaver v. Graham**, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), citing **Cummings v. Missouri**, 4 Wall. 277, 71 U.S. 277, 326, 18 L.Ed. 356 (1866).

**Cimaszewski v. Bd. Of Probation and Parole**, 868 A.2d 416, 422 (Pa. 2005).

Section 9718.2 is a recidivism statute, and it is well settled that "statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times." **Parke v. Raley**, 506 U.S. 20, 26 (1992). Furthermore, the United States Supreme Court has "repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with ex post facto laws." **Id**. at 27. In light of **Parke**, we deem Welsh's argument to have no merit.

(Doc. 15-1 at 36-37).

The Court finds the Superior Court's decision did not unreasonably apply Supreme Court case law when they rejected this claim. Any number of federal or state statutes provide for enhanced sentences for recidivist offenders. For example, in Almendarez-Torres, 523 U.S. at 230, the Court noted that recidivism is "…as typical a sentencing factor as one might imagine" which is generally employed in sentencing guidelines for variable sentences and sometimes used as a triggering mechanism for mandatory sentences. Regardless of how its employed, recidivism serves as an enhancement factor for the sentences being imposed for the crime at issue, not as a supplemental punishment for the prior offense. Consequently, Welsh's argument lacks merit and he is not entitled to relief on this claim.

### Claim Four - <u>Fourteenth Amendment Claims</u>

### a. <u>Motion to Sever</u>

Petitioner claims that the trial court denied him due process in refusing his motion to sever his case from that of his co-defendant, "especially in light of the fact that the court allowed into evidence prior bad acts of the co-defendant in which the defendant did not take part." (Doc. 1 at 16).

First, as a general rule:

[F]ederal courts ... have held that "[c]onsolidation and severance of cases is a matter of Pennsylvania state law." Johnston v. Mahally, No. 15-CV-4800, 2017 WL 11529681, at *5 (E.D. Pa. Mar. 30, 2017) (citing Marten v. Sauers, No. 11-2875, 2012 WL

- 25 -

3279247, at *6 (E.D. Pa. July 13, 2012), <u>report and recommendation adopted</u>, No. 11-2875, 2012 WL 3290402 (E.D. Pa. Aug. 13, 2012)) <u>report and recommendation adopted</u>, 348 F. Supp. 3d 417 (E.D. Pa. 2018); <u>see</u> Toussaint v. Klem, No. CIV.A. 03-0927, 2004 WL 727061, at *6 (E.D. Pa. Mar. 31, 2004) (finding that where "Petitioner's only exhausted claim is that the trial court improperly denied his motion to sever the two cases against him for trial," it did not "pass this Court's jurisdictional requirement that his claim involve a matter of federal constitutional law," and "[d]espite the tenuous implication [of the Due Process Clause] ... consolidation of offenses, and decisions on motions to sever charges, are state law questions").

Pratt v. Marsh, No. 2:19-CV-00416, 2021 WL 2188576, at *15 (E.D. Pa. May 28, 2021). Thus, to the extent that Welsh's claim of trial court error based on a failure to sever is governed exclusively by state law, this claim simply does not implicate any federal constitutional or statutory rights. As such, it does not provide grounds for federal habeas corpus relief, which may be granted "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

Moreover, federal courts have frequently rejected habeas corpus claims like those presented here which rest upon state trial court rulings denying motions to sever based upon allegedly antagonistic defenses. In this regard, it has been noted that:

> "There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and 'serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts'." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d

317 (1993). "Joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." United States v. Lane, 474 U.S. 438, 448, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Mutually antagonistic or irreconcilable defenses may be so prejudicial in some circumstances that severance is mandated. Zafiro, 506 U.S. at 538, 113 S.Ct. 933. The Supreme Court has explicitly declined to adopt a bright line rule mandating severance whenever co-defendants have conflicting defenses. Id. District courts should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539, 113 S.Ct. 933. Very few convictions have been reversed for failure to grant a severance because of mutually antagonistic or irreconcilable defenses.

Hetzel v. Lamas, 630 F. Supp. 2d 563, 573–74 (E.D. Pa. 2009), aff'd, 372 F. App'x 280 (3d Cir. 2010). The same legal standards favoring joint trials prevail in state court, where it is well settled that:

In Pennsylvania, the decision to grant a motion for severance is a matter within the discretion of the trial court and should not be overruled absent a manifest abuse of discretion. Commonwealth v. Chester, 526 Pa. 578, 587 A.2d 1367, 1378 (1991). Joint trials are advisable where conspiracy is charged unless a party can show that he will be prejudiced by a joint trial. Chester, 587 A.2d at 1372–73. A defendant must show a real potential for prejudice, not just mere speculation. Commonwealth v. Jones, 542 Pa. 464, 668 A.2d 491, 501 (1995). The existence of antagonistic defenses is a factor to be considered, but more than a bare assertion of antagonism is required. Chester, 587 A.2d at 1372. "Defenses only become antagonistic when the jury, in order to believe the testimony offered on behalf of the one defendant, must disbelieve the testimony offered by his or her co-defendant." Jones, 668 A.2d at 501. Mere hostility between defendants or that one may try to save himself at the expense of a co-defendant is in itself not sufficient ground to grant a

severance. Id. "In fact, it has been asserted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together." Chester, 587 A.2d at 1372.

Id. at 574.

In the instant case, the Pennsylvania Superior Court thoroughly considered this severance issue on appeal.

Welsh next argues that trial court erred by denying his motion to sever his case from that of co-defendant Makara. He specifically complains that he was prejudiced by testimony regarding acts committed by Makara against A.D. while they were on vacation in Florida. He further asserts that "by the testimony of the Commonwealth's own witness, A.D., [Appellant] Welsh did absolutely nothing wrong.' Brief of Appellant at 42-43.

Our review of the record indicates that the factual underpinnings of Welsh's argument are incorrect. At trial, the following exchange took place between the prosecutor and A.D.

Q: How did you end up in Florida?

A: Vacation.

Q: Who were you on vacation with?

A: Dean and Gene.

Q: And how did you get to Florida?

Q: And what happened in Florida?

A: They touched me there.

Q: When you say they touched me there, I need you to describe specifically.

A: Gene.

Q: Gene[,] and where did he touch you?

A: My private.

Q: And what did he touch you in his privates with?

A: His private.

Q: Where did you sleep when you were in Florida?

A: In the bed in the camper.

Q: Who else slept in the bed in the camper?

A: Dean and Gene.

Q: Did this happen once in Florida or more than once?

A: More than once.

Q: And where was Dean when Gene put his private in your private in Florida?

A: In the same room behind Gene or on the bed?

Q: Did Dean do anything?

A: He would help Gene put his private into my private.

N.T. Trial, 9/16/10, at 322-23.

"A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion." **Commonwealth v. Melendez-Rodriguez**, 865 A.2d 1278, 1282 (Pa. Super. 2004). "The critical consideration is whether appellant was prejudiced by the trial court's decision not to sever." **Commonwealth v. Lopez**, 739

A.2d 485, 501 (Pa. 1999). Furthermore, the appellant bears the burden of establishing prejudice. **Melendez-Rodriguez, supra**. As discussed above, evidence regarding activities in Florida was admissible under the exceptions recognized by Pa.R.E. 404(b). Accordingly, these acts would have been admissible even if the court had held a separate trial for Welsh. Therefore, Welsh has failed to establish that he was prejudiced by the trial court's denial of his motion to sever.

(Doc. 15-1 at 33-35).

This conclusion of the Pennsylvania Superior Court is entirely consistent with both state and federal law, which recognizes a strong preference for the joint trial of defendants who have been properly joined together based upon their alleged involvement in the same series of acts or transactions. It is also completely in accord with federal case law, which has generally rejected severance denial claims as grounds for federal habeas corpus relief. Therefore, the state court finding was not (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," and was not (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). Accordingly, this state court decision denying Welsh's severance claim provides no grounds for habeas corpus relief for Welsh.

## b. Change of Venue

Petitioner claims that the denial of his request for a change of venue deprived him of a fair trial because of "…sensational, inflammatory and slanted…" press coverage following his arrest. (Doc. 1 at 6).

On appeal, the Superior Court found that the trial court did not abuse its discretion in denying Petitioner's motion for a change of venue or venire as follows:

> Welsh next argues that the trial court erred in denying his motion for a change of venue. Pa.R.Crim.P. 584(A) provides that "[a]ll motions for change of venue or for change of venire shall be made to the court in which the case is currently pending. Venue or venire may be changed by that court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending."

> "The determination of whether to grant a change of venue rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." **Commonwealth v. Weiss**, 776 A.2d 958, 964 (Pa. 2001).

> Normally, one who claims that he has been denied a fair trial because of pretrial publicity must show actual prejudice in the empanelling of the jury. In certain cases however, pretrial publicity can be so pervasive or inflammatory that the defendant need not prove actual prejudice. Pretrial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted toward conviction rather than factual and objective; (2) the publicity reveals the defendant's prior criminal record, or if it refers to confessions, admissions or reenactments of crime by the accused; and (3) the publicity is derived from police and prosecuting officer reports.

- 31 -

**Id**. (citations omitted).

Welsh argues that the publicity generated by articles in *The Press Enterprise*, which is the largest general-circulation newspaper in Columbia County, was sensational, inflammatory and slanted toward conviction. Brief of Appellant, at 38-39. In support of his claim that the trial court erred by not granting a change of venue, Welsh cites a survey conducted for the defense by Dr. Neil Sloan, an associate professor of sociology at Bloomsburg University, Dr. Sloan surveyed 162 adults in Columbia County, 99 of whom (61.1 percent) were familiar with the case. N.T. Pretrial Hearing, 6/23/10, at 66-67. Welsh asserts that 20.9 percent of the people interviewed stated that he was probably guilty, and that 22 percent of the people stated that he was definitely guilty. Brief of Appellant, at 38. However, that percentage is based only on the number of people who were familiar with the case. Of the total of 162 people surveyed, a significantly smaller percentage had any opinion regarding Welsh's guilt.

In **Commonwealth v. Tharp**, 830 A.2d 519 (Pa. 2003), our Supreme Court held that, even where the pretrial publicity that the defendant complained of was sensational, inflammatory, and slanted towards conviction, the fact that twenty-two months elapsed between the last complained of media coverage and jury selection "was more than sufficient to dissipate any prejudicial effects of the pretrial media coverage. **Id**. at 529. **Tharp** noted that far shorter periods of time had been recognized as adequate to dissipate the effects of pretrial publicity. **Id**.; **see**, **e.g.**, **Commonwealth v. Counterman**, 719 A.2d 284 (Pa. 1998) (one year); **Commonwealth v. McCullum**, 602 A.2d 313 (Pa. 1992) (nine months); **Commonwealth v. Breakiron**, 571 A.2d 1035 (Pa. 1990) (one year). In the instant matter, Welsh sought a change of venue based on the publication of several articles about the case in The Press Enterprise 2007 and 2008, and three articles about the recusal of the trial judge in 2010. Jury selection in this case began on September 13, 2010. Because the articles regarding the substance of the case were published more than two years before trial, sufficient time elapsed to prevent the publicity from negatively affecting the jury selection process.

- 32 -

> During the first day of *voir dire*, the court excused all individuals who indicated that they had formed an opinion about the case. N.T. Trial, 9/13/10, at 113. All jurors who were selected to serve stated during individual *voir dire* that they had no opinion about the case. N.T. Trial, 9/14/10, at 23, 46, 56, 126, 196, 214, 260, 268, 278, 289, 316, 361. Because the *voir dire* confirmed that the presumptive adverse effects of pretrial publicity had dissipated, **see Tharp**, **supra**, Welsh was not entitled to a change of venue.

(Doc. 15-1 at 26-29).

A criminal defendant has a right to "a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." Irvin v. Dowd, 366 U.S. 717, 722 (1961). Jurors are not required, however, to be totally unaware of the facts and issues involved in a case. Murphy v. Florida, 421 U.S. 794, 799-800 (1975). "It is sufficient if the juror can lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court." Id. (quoting Irvin, 366 U.S. at 723). A defendant can establish actual prejudice by presenting evidence to show that "those who actually served on his [or her] jury lacked a capacity to reach a fair and impartial verdict based solely on the evidence they heard in the courtroom." Rock v. Zimmerman, 959 F.2d 1237, 1253 (3d Cir. 1992), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619 (1993).

However, "where media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to preclude a rational trial process, a court reviewing for constitutional error will presume prejudice to the defendant without reference to an examination of the attitudes of those who served as the defendant's jurors." Riley v. Taylor, 277 F.3d 261, 299 (3d Cir. 2001). "The community and media reaction, however, must have been so hostile and so pervasive as to make it apparent that even the most careful *voir dire* process would be unable to assure an impartial jury.... Such cases are exceedingly rare." Id.

To determine whether trial publicity has prejudiced the jury, courts must: (1) determine whether the news coverage is prejudicial; (2) if so, determine whether any jurors were exposed to the coverage; and (3) if exposure did occur, the court examines the exposed jurors to determine if this exposure compromised their impartiality. Barry v. Bergen Cnty. Prob. Dep't, 128 F.3d 152, 163 (3d Cir. 1997).

Here, the Superior Court did not unreasonably apply federal law in rejecting this claim. First, the Court addressed the issue of presumed prejudice, finding that the lapse of two to three years between publication of the newspaper articles at issue and the trial date were sufficient enough to prevent contamination of the jury selection process. (Doc. 51-1 at 29). While

Petitioner alleges that the article published about his case was in the "largest general-circulation newspaper in Columbia County," the Superior Court found that the jurors only had a vague recollection of the underlying facts of the Petitioner's trial. Id. at 28.

Second, the Court addressed the issue of actual prejudice, finding that the trial court questioned every juror who indicated they had knowledge of Petitioner's case, and excused any potential juror who revealed an inability to be impartial. Id. The Superior Court addressed both presumed and actual prejudice and found this claim meritless. Because the state court's rejection of this claim does not violate clearly established federal law, nor was it an unreasonable application of Supreme Court precedent, this claim is denied.

### c. **Insufficient specificity of dates of alleged offenses**

Petitioner's third claimed denial of due process under the Fourteenth Amendment is that "[t]he charges against him should have been dismissed because the Commonwealth failed to provide the Petitioner the times and dates when the alleged crimes occurred, with reasonably certainty." (Doc. 1 at 21).

The Superior Court addressed the trial court's lack of error as follows:

Pa.R.Crim.P. 504(4) sets forth the requirement of specificity in criminal complaints:

- 35 -

**Rule 504. Contents of Complaint**

Every complaint shall contain:
(4) the date when the offense is alleged to have been committed; provided, however:
(a) if the specific date is unknown, or if the offense is a continuing one, it shall be sufficient to state that it was committed on or about any date within the period of limitations; and
(b) if the date or day of the week is an essential element of the offense charged, such date or day must be specifically set forth.

Pa.R.Crim.P. 504.

Pa.R.Crim.P. 560(B)(3) sets forth the requirement for specificity in a criminal information:

**Rule 560        Information: Filing, Contents, Function**
(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

. . .

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day  of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient.

Pa.R.Crim.P. 506(B)(3).

Since the inception of this case, the Commonwealth has alleged that Welsh engaged in a continuing course of conduct spanning several years. The allegations are supported by the testimony of A.D., who stated that the abuse began when she was eight or nine, occurred most of the time she stayed overnight, and

happened until she left her family and did not see them anymore. N.T. Trial, 9/16/10, at 316, 321. She testified that she went into foster care at age twelve. Id. at 332, 335. The Commonwealth alleged, and the testimony supported a continuing course of conduct over a minimum of four years. Therefore a specific date was not required in the criminal complaint pursuant to Pa.R.Crim.P. 504(4)(a). The information and bill of particulars stated that the offenses occurred during the period fixed by the statute of limitations therefore meeting the requirements of Rule 504(4)(a) and Rule 560(B)(3).

In **Commonwealth v. Yon**, 341 A.2d 169 (Pa. Super. 1975), the defendant was accused of statutory rape, sodomy and corrupting the morals of a minor between January 1, 1972 and July 1, 1973. The victim indicated that the criminal acts occurred twice when the defendant was at her home. The Commonwealth established that the defendant first went to the home on or about January 1, 1972 with subsequent visits occurring up to July 1, 1973. This Court recognized that the relevant question with respect to the specificity of date and time was whether the defendant was informed "of that which he must be prepared to meet in the preparation of his defense." Id. at 171.

Here, the facts, circumstances and allegations in the criminal complaint, information, and bill of particulars informed Welsh of the offenses he was charged with and the period of time during which he was alleged to have committed the offenses. Accordingly, he had a sufficient basis on which to prepare a defense and thus the trial court did not err in denying his request to dismiss the charges.

(Doc. 15-1 at 37-39).

The state court's determination that the incidents occurred during a continuing course of conduct over a minimum of a four-year period, was not an unreasonable determination of the facts. The record reflects that Welsh was sufficiently informed of the charges against him in order to prepare an

effective defense. See Russell v. United States, 369 U.S. 749, 763 (1962)
(recognizing that the sufficiency of an indictment is measured by "whether
the indictment contains the elements of the offense intended to be charged
and sufficiently apprises the defendant of what he must be prepared to
meet") (internal quotations omitted); see also Real v. Shannon, 600 F.3d
302, 308 (finding variance not unconstitutional, in part, because the
indictment contained language of "on or about" the specific date). As such,
the court will deny habeas relief on this claim.

### Claim Five – Challenges to trial Court's evidentiary rulings

Petitioner raises a series of claims that evidentiary rulings by the trial
court denied him a fair trial based on alleged violations of his rights under
the Sixth and Fourteenth Amendments.

The Supreme Court has repeatedly stated that "it is not the province of
a federal habeas court to reexamine state-court determinations on state law
questions." Estelle, 502 U.S. at 68. As a general rule, the "admissibility of
evidence is a state law issue,"[8] and state evidentiary errors are not
cognizable in a federal habeas corpus proceeding unless the error deprived
the petitioner of fundamental fairness in his criminal trial. See Donnelly v.
DeChristoforo, 416 U.S. 637, 642-43 (1974). An error of state evidentiary law

---

[8] Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008).

deprives a petitioner of fundamental fairness "if the probative value of evidence, although relevant, was greatly outweighed by the prejudice to the accused from its admission." Albrecht v. Horn, 485 F.3d 103, 122 n.6 (3d Cir. 2007). The improper exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). Thus, the essential question in addressing Petitioner's claims is whether any of the evidentiary rulings in question denied Petitioner fundamental fairness at trial.

### a. "Prior Bad Acts" testimony

Petitioner claims a denial of due process under the Fourteenth Amendment, when evidence of Petitioner's prior bad acts was introduced at trial by the Commonwealth pursuant to Pennsylvania Rules of Evidence 404(b). (Doc. 1 at 18). Specifically, Petitioner states that trial court erred in allowing "the introduction of evidence of prior bad acts of Petitioner inappropriately touching A.D. in Florida while sleeping when the act was involuntary" and "as such could not be considered a prior voluntary bad act when A.D.'s trial testimony establishes that the only inappropriate contact occurred between herself and Petitioner while both were sleeping and thus involuntary." (Doc. 11 at 84). Respondent argues that Petitioner's challenge to an evidentiary ruling – based on his contention that the admission of the

evidence violated the federal and state rules of evidence – is not a cognizable claim for habeas relief. They also assert that there was no error here under state law, in that evidence of prior bad acts is admissible in certain circumstances, several of which were established here.

On state direct appeal, Petitioner argued that the trial court erred in allowing the Commonwealth to introduce evidence of prior bad acts committed by Welsh against A.D. during trips to Florida in 2002 and 2003. (Doc. 15-1 at 23). The Superior Court first recognized that the Commonwealth introduced the prior acts evidence pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence, which provides in relevant part:

> Rule 404(b) Other crimes, wrongs or acts.
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, knowledge, identity or absence of mistake or accident.
>
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.
>
> (4) In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Pa. R. Evid. 404(b).

Id.

The Superior Court then provided the following analysis:

Our disposition of this issue relies heavily on our decision in **Commonwealth v. Wattley**, 880 A.2d 682 (Pa. Super. 2005). **Wattley** involved a defendant who was accused of sexually abusing his daughter in Pennsylvania. The trial court permitted the Commonwealth to introduce evidence that the defendant had committed similar acts against his daughter in Texas. On appeal, this Court affirmed, relying in part on **Commonwealth v. Knowles**, 637 A.2d 331 (Pa. Super. 1994), where we held:

Evidence of prior sexual relations between defendant and his or her victim is admissible to show a passion or propensity for illicit sexual relations with a victim. This exception is limited, however. The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a continuing course of conduct.

**Id**. at 333.

**Wattley** further noted that "Pennsylvania courts have long recognized the special significance of evidence which presents [the factfinder] with the *res gestae*, or complete history of a crime." **Wattley**, 880 A.2d at 687. The **Wattley** court concluded that the evidence proffered by the Commonwealth was relevant to show that the defendant had a propensity for illicit sexual contact with the victim and that "the testimony provided res gestae evidence that was critical to enable the factfinder to evaluate the totality of the evidence and draw accurate inferences therefrom." **Id**. at 688.

In assessing whether challenged evidence should be admitted, the trial court must weigh the evidence and its probative value against its potential prejudicial impact. . .

- 41 -

> Our scope of review is limited to an examination of the trial court's stated reason for its decision.

**Id**. at 685.

The criminal information in the case before us involves activity that took place between January 1, 2002 and August 29, 2007. The trips to Florida when A.D. accompanied Welsh and Makara took place during this time period in 2002 and 2003. In determining that the evidence was admissible, the court stated:

> [W]e find that it is probative, we find that it established a common plan and scheme and is, in fact, part of what we would consider to be the res gestae of the full relationship between the children and the Defendants.

> The time frame is not too remote, particularly given the ages of the children and the overall relationship that is alleged by the Commonwealth that would exist between the Defendants and children. We do not find that it is an inflammatory or extremely prejudicial nature to the Defendants. We also believe that there is a commonality of events that is asserted by the Commonwealth as would relate to the episode for which the Defendants are now standing trial.

N.T. Trial, 9/13/12, at 15-16.

The trial court instructed the jury as follows with respect to what took place in Florida:

> I would like to make very clear here at the outset that you've heard evidence in which the Commonwealth alleges that the Defendants were guilty of improper conduct in relation to a trip to Florida. The Defendants are not on trial for any event that occurred in the State of Florida or on the trip there or the trip back. That would be outside the jurisdiction of this Court and we would not have the legal authority to try the Defendants on it. That's one thing.

> Secondly, you must keep in mind that as to each act that's charged, before either of the Defendants could be found guilty of the act, you must be convinced beyond a reasonable doubt that the act occurred within Columbia County. You also need to understand that the evidence of the Florida trip was entered into evidence for a very limited purpose. That is for the Commonwealth's purpose of tending to show an intent or common plan.
>
> This evidence must not be considered by you in any way other than the purpose I have just stated. You must not regard this evidence as showing that either of the Defendants is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T. Trial, 9/20/10, at 1106-07.

> The evidence regarding activities in Florida was relevant under the exceptions recognized by Pa.R.E. 404(b) and was not submitted to show bad character or propensity to commit crimes. The court properly exercised its discretion in determining that its probative value outweighed its potential for prejudice. Especially in light of the court's instruction to the jury regarding the limited purpose for which the evidence was admitted, Welsh has not established that he is entitled to relief on this issue.

(Doc. 15-1 at 24-26).

We agree with Respondent that habeas relief cannot be granted to review this as a claim of alleged state error, that is, to assess whether the state court correctly interpreted state rules of evidence. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). Any such claim may be denied as non-cognizable.

Additionally, to the extent that Petitioner alleges that the admission of this evidence violated his Fourteenth Amendment trial rights, we agree with Respondent that no error appears here under any accepted notion of what equates to a constitutionally mandated "fair trial." Petitioner argues that this evidence "lacked relevance" and that any probative value was outweighed by its prejudicial effect. But we see nothing fundamentally unfair here, nor anything that violated notions of federal due process. There was a basis for this evidence of prior contact between Petitioner and A.D. The trial court limited the prejudicial effect of this evidence with a proper instruction. Moreover, a claim of state court trial error on habeas review is subject to the harmless error standard set out in Brecht v. Abramson, 507 U.S. 619 (1993). This requires the habeas petitioner to show that the admission of this evidence "had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 639. The trial court directed the jury as to the proper use of this evidence. Accordingly, we see no plausible claim that Petitioner was deprived of a fair trial or otherwise improperly convicted due to the admission of this evidence. The state court's rejection of this claim was not an unreasonable application of any Supreme Court precedent.

### b. Production of video evidence by the Commonwealth

Petitioner claims that the trial court "failed to dismiss the charges or at least grant the Petitioner a continuance when the Commonwealth turned over important videotapes which were admitted into evidence four days before trial when all discovery was requested two years beforehand and when the said tapes were in the Commonwealth's possession for approximately two years prior to disclosure." (Doc. 1 at 22).

The Superior Court rejected Petitioner's claim as follows:

Welsh's final contention is that the trial court should have dismissed the charges against him or granted him a continuance due to the Commonwealth's failure to provide him, in a timely manner, with DVDs of interviews of A.D. and D.D. that Dennis Wilson of Clinton County CYS conducted. When counsel for Welsh received the DVDs on September 2, 2010, he could understand some of the audio portion but there was no video portion. Counsel contacted the District Attorney's Office and was informed that they had no other DVDs. Approximately five days later, and about four days before trial, the District Attorney's Office contacted counsel and informed him that he would need to download RealPlayer for the DVDs to be operable.

The decision to grant or deny a continuance is within the discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of that authority. **Commonwealth v. Chambers**, 685 A.2d 96 (Pa. 1996). In light of the fact that in 2008 the Commonwealth provided counsel for Welsh with discovery, including notes from the interviews at issue, Welsh has not established that he is entitled to relief on this issue.

(Doc. 15-1 at 39-40).

The Court finds that the Superior Court's recognition that the Commonwealth had substantially complied with its discovery obligation in this regard, by providing notes of the interviews in question in January 2008, more than two years prior to trial, clearly supports the trial court's denial of Petitioner's request for trial continuance. The Superior Court's decision satisfies the fundamental fairness standard applicable to due process challenges of this kind. Lisenba v. California, 314 U.S. 219 (1941) (finding that it is only where an evidentiary ruling "so infuse[s] the trial with unfairness as to deny due process of law"). Consequently, Petitioner is not entitled to relief on this claim.

**c. Trial Court erred in allowing out-of-court statements made by victims.**

Petitioner claims that the trial court erred when it "allowed the Commonwealth to present hearsay evidence in regard to the charges against the Petitioner including but not limited to prior statements of the alleged victim's counselors and investigators when said statements were unreliable." (Doc. 1 at 24). Petitioner claims that it was error to permit these statements under the Pennsylvania's "tender years" exception to the hearsay rule. Id.

In relevant part, Pennsylvania's Tender Years Exception provides:

- 46 -

(a) General rule. —An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in [selected criminal statues, including sexual offenses] ..., not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
> (2) the child either:
> (i) testifies at the proceeding; or
> (ii) is unavailable as a witness.

42 Pa.C.S.A. §5985.1(a) (2008).

In addressing Petitioner's claim, the Superior Court found no trial court error based on the following:

> Under the tender years exception, once the court determines that the statements are relevant and possess the required indicia of reliability, they will be admissible provided the child testifies at trial. This exception was created due to the fragile nature of child victims of sexual abuse. **Commonwealth v, Fink**, 791 A.2d 1235 (Pa. Super. 2002); **Commonwealth v. Bishop**, 742 A.2d 178 (Pa. Super. 1999). The standards for determining whether the statements possess the required indicia of reliability were set forth in **Idaho v. Wright**, 497 U.S. 805 (1990). The factors include: (1) the spontaneity and consistent repetition of the statements; (2) the mental state of the declarant; (3) the use of terminology unexpected in a child of similar age; and (4) the lack of a motive to fabricate. **Commonwealth v. Delbridge**, 771 A.2d 1 (Pa. Super. 2001).

> Pursuant to section 5985.1, the trial court conducted *in camera* hearings on September 15, 2010, where the following individuals who had interviewed the victims testified: Sherry Moroz from the

- 47 -

Child Advocacy Center; Melissa Magargle from Families United Network; and Dennis Wilson from Clinton County Children and Youth Services. After hearing extensive testimony regarding the techniques and protocols followed by the interviewers, and the statements made to them by A.D. and D.D., the trial court determined that the interviews "provided sufficient reliability to allow their admission." N.T. Trial, 9/15/10, at 197. The court further noted that, "[o]verall, there's no evidence of any unusual mental state. The children used words and terminology expected of them and I have seen no evidence that would support that somehow they have a motive to fabricate testimony against these two Defendants." Id. at 198. In light of the extensive testimony at the *in camera* hearing and the trial court's application of the appropriate standards to determine the reliability of the victim's statements, the trial court did not abuse its discretion in admitting the hearsay evidence presented by the interviewers.

(Doc. 15-1 at 19-20). Accordingly, we do not find that the state court's decision with respect to the admissibility of the victim's statements was contrary to or involved an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings.

### d. Denial of videotape evidence

Petitioner claims that the trial court erred in denying Petitioner the opportunity to "present videotape evidence of the alleged victim A.D., in which she stated she was afraid to go home because of fear of her father,

especially in light of the fact that A.D. testified at the time of trial she was afraid of the Defendant." (Doc. 1 at 25).

The Superior Court found no error, affirming the trial court's ruling as follows:

At trial, the following exchange took place between A.D. and the assistant district attorney:

> Q:   When did you tell Melissa Magargle [about Welsh and Makara]?
>
> A:   Not when I first came. It was like. . . sometime in Mill Hall.
>
> Q:   Why did you decide to tell Ms. Magargle?
>
> A:   Because I was supposed to go home soon and I didn't want to go home.
>
> Q:   What did going home have to do with Gene and Dean?
>
> A:   'Cause I knew if I was going to go home we would still go there.
>
> Q:   You would still go where?
>
> A:   To Dean and Gene's.

N.T. Trial, 9/16/10, at 420-21.

Welsh sought to play for the jury a portion of a videotaped interview recorded on January 17, 2008, in which A.D. told Dennis Wilson that she was scared to go home because she was scared that her father would do something. She then described the ways in which her father had touched her.

- 49 -

The evidence established that A.D. first told Melissa Magargle about sexual acts with Welsh and Makara on May 29, 2007. N.T. Trial, 9/15/10, at 97. It was at that point that she feared returning home because she did not want to see Welsh and Makara. N.T. Trial, 9/16/10, at 420-21. It was not until more than seven months later, on January 17, 2008, that A.D. told Dennis Wilson that she was scared to go home because of what her father had done.

Welsh asserts that A.D.'s statement at trial that she was afraid to go home because she would have to see Welsh and Makara "is completely contrary to her statements on video" in which she explains that she was afraid of going home because of her father. Brief of Appellant, at 32. He argues that A.D.'s admission to Dennis Wilson is a prior inconsistent statement that the court should have permitted him to use when cross examining A.D. At trial, the court explained that it would not permit the jury to see the video clip because it was not exculpatory and did not impeach the evidence that A.D. gave on the witness stand. N.T. Trial, 9/17/10, at 802. The court noted that A.D.'s trial testimony and her statement to Dennis Wilson related to different points in her life, and therefore were not inconsistent. **Id**.

"The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Hernandez**, 39 A.3d 406, 411 (Pa. Super. 2012) (citation omitted). Here, the trial court carefully reviewed the evidence and considered the arguments of counsel before concluding that the videotaped statement was neither exculpatory of Welsh nor inconsistent with A.D.'s prior testimony. Accordingly, Welsh is not entitled to relief on this issue.

(Doc. 15-1 at 21-23). Here, Petitioner has failed to demonstrate that the

excluded video evidence was crucial to his conviction. As a result, the video

was properly excluded, and the trial court did not commit an error of constitutional dimension.

### e. **Denial of Psychological evaluation**

Petitioner claims that "the trial court refused to allow the alleged victim A.D. to be evaluated by the Petitioner's psychological experts to determine their competency to testify and their propensity to lie." (Doc. 1 at 25). In support of their principal defense that the minor victims, A.D. and D.D. were fabricating their allegations of sexual abuse, Welsh and, his co-defendant Makara sought to have the children examined by a psychiatrist or psychologist in an effort to establish that they had a propensity to lie and/or lacked sufficient competency to testify at trial. Id. In support of the request, defense counsel directed the trial court's attention to the children's records from various social service agencies which had evaluated them in the past as well as their testimony from the pre-trial habeas corpus hearing held in 2008. Id.

The trial court denied Petitioner's request and the Superior Court affirmed as follows:

> Welsh next asserts that the trial court erred by refusing to allow his psychological experts to evaluate A.D. and D.D. to determine their competency to testify and their propensity to lie. In an order denying Welsh's motion filed August 12, 2010, the trial court noted, *inter alia*:

- 51 -

This Court finds that there is no evidence of a mental condition of either child that requires an evaluation by a psychologist or a psychiatrist. We also find that both child victims are now age 14 or above. Further, upon review of the testimony of the children at the prior omnibus hearing held . . . on September 10, 2008, that both child victims demonstrated appropriate competency in giving testimony.

Order, 8/12/10, at 2.

The determination of a witness's competency rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. **Commonwealth v. Judd**, 897 A.2d 1224, 1228 (Pa. Super. 2006). The general rule in Pennsylvania is that every witness is presumed to be a competent witness. **Commonwealth v. Delbridge**, 855 A.2d 27, 39 (Pa. 2003). The presumption of competency applies to child witnesses. It is only when a proposed witness is under the age of fourteen that a judicial inquiry into his or her mental capacity takes place before he or she can testify. **Commonwealth v. Anderson**, 552 A.2d 1064 (Pa. 1998). In the instant matter, A.D. was fifteen at the time of trial, and D.D. was fourteen. Consistent with the case law developed by this Court, Welsh was not entitled to a competency evaluation of the witnesses. **See Judd**, **supra** (factors underlying three-part test for evaluating testimonial competence of minors - capacity to communicate, observe event and understand necessity to speak truth are less relevant as witness's age increases and rendered totally irrelevant as matter of law by age fourteen); **Commonwealth v. Moore**, 980 A.2d 647 (Pa. Super. 2009) (where witness was fourteen at time of trial issues regarding observation of incident are questions of credibility); **Commonwealth v. Pena**, 31 A.3d 704 (Pa. Super. 2011) (mental health/behavioral problems of fourteen and fifteen year old witnesses are credibility factors, not legal issues to be determined via competency hearing). Accordingly, the trial court did not abuse its discretion in denying Welsh's request for a psychological examination of the witnesses.

(Doc. 15-1 at 29-30).

- 52 -

The trial court's compliance with the appropriate standard in denying Petitioner's request for psychological evaluation of his accusers clearly satisfies the fundamental fairness standard applicable to due process challenges. Accordingly, Petitioner's claim lacks merit and relief will be denied on this claim.

### f. Denial of Victims' prior counseling records

Petitioner claims trial court error in the denial of his request for permission to disseminate the children's counseling records, which had been provided to the defendants pursuant to a prior Order of the trial court, to prospective expert witnesses for the purpose of providing testimony regarding the children's competency, propensity to lie and potential "taint" from their prior interviews. (Doc. 1 at 27).

The Superior Court affirmed the trial court's denial of Petitioner's request as follows:

> Welsh next challenges the court's decision regarding the victims' counseling records. The court granted Welsh's attorney access to the records but precluded the attorney from providing the records to his experts "to present testimony in regard to the children's competency, their propensity to lie and the effect of taint from the various interviews on the children."[9] Brief of Appellant, at 41-42. The court conducted an *in camera* review of

---

[9] The Pennsylvania Supreme Court has defined "taint" as "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques." **Delbridge**, 855 A.2d at 35 (citation omitted).

the records and found no basis for a propensity to lie, taint or incompetence to testify. It is well settled that "[w]here the record fails to establish there is a question as to the victim's competency, we refuse to sanction any intrusion into the victim's existing psychological records or any cross-examination as to psychiatric treatment." **Commonwealth v. Boich**, 982 A.2d 102, 110 (Pa. Super. 2009).

We further note that dissemination of the information contained in the records was precluded by section 7711 of the Mental Health Procedures Act (MPHA)[10] section 5944 of the Judicial Code[11] and section 5945 of the Judicial Code.[12] "Information

---

[10] Section 7111 of the MPHA provides in relevant part that, but for exceptions that do not apply in this case:

**§7111 Confidentiality of Records**

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone[.]

[11] Section 5944 of the Judicial Code provides in relevant part:

**§5944 Confidential communications to psychiatrists or licensed psychologists**

No psychiatrist or person who has been licensed. . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relationship and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

[12] Section 5945 of the Judicial Code provides in relevant part:

**§5945 Confidential communications to school personnel**

*(footnote continued on next page)*

which is protected by an absolute statutory privilege is not subject to disclosure and denial of access to a criminal defendant is required." **Commonwealth v. Eck**, 605 A.2d 1248, 1252 (Pa. Super. 1992).

Because the victims' competence was not at issue, and the counseling records that Welsh sought to disseminate were privileged, the trial court did not err in precluding Welsh from allowing his experts to review the records.

(Doc. 15-1 at 31-33).

Petitioner has once again failed to demonstrate that the excluded counseling records were crucial to his conviction. The exclusion of such records was properly determined as unnecessary and statutorily barred. As such, the trial court did not commit an error of constitutional dimension. Accordingly, Petitioner's claim lacks merit and warrants no relief.

### Claim Six – <u>Ineffective Assistance of Counsel</u>

---

(a) General rule. — No guidance counselor, school nurse, school psychologist or home and school visitor in the public schools or in private or parochial schools . . . who, while in the course of his professional or clerical duties. . . has acquired information form a student in confidence shall be compelled or allowed:

(1)     without the consent of the student, if the student is 18 years of age or over; or

(2)     without the consent of his parents or guardian,
        if the student is under the ages of 18 years;

to disclose such information in any legal proceeding, trial, or investigation before any government unit.

Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Strickland recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" Titlow, 571 U.S. at 24.

Under Strickland, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Titlow, 571 U.S. at 22 (quoting Strickland, 466 U.S. at 690); Richter, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689). Counsel

cannot be deemed ineffective for failing to raise a meritless claim. See, e.g., Preston v. Sup't Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018).

Strickland also requires that Petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Counsel's errors must be so serious as to have "deprive[d] [Petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. Under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

The Supreme Court in Strickland noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of Strickland. Id.

At the time the Pennsylvania State Court reviewed the ineffective assistance claims raised by Welsh, Strickland's two-pronged test was the "clearly established federal law" applicable to ineffective assistance of

- 57 -

counsel claims. Under Pennsylvania state law, a three-pronged test is applied to ineffective assistance of counsel claims. See Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-977 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2000).

Petitioner raises the following six claims of ineffective assistance of counsel:

1. Trial counsel was ineffective for failing to amend the Petition for Allowance of Appeal Welsh filed in the Pennsylvania Supreme Court in 2012, to include a challenge to the legality of Welsh's life sentence pursuant to Alleyne and its progeny. PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness in this regard before the PCRA court.

2. Trial counsel was ineffective for failing to request dismissal of all the charges against Wels because the information which the Commonwealth used to support its search warrant of Petitioner's property was stale because it was based on evidence which was over three years old.

3. Trial counsel was ineffective for failing to move for severance of Welsh's jury trial from that of his codefendant, where Welsh was ready to proceed to trial, but his codefendant's case was "stalled" due to a pre-trial appeal, which resulted in a violation of Welsh's right to a speedy trial.

4. PCRA counsel was ineffective for failing to investigate purported new evidence that the prosecuting attorney had engaged in misconduct by coaching and permitting the female victim to lie in her testimony, and by failing to request a court-

appointed private investigator to locate and interview this victim's foster father, who also sexually abused the victim.

5. Trial counsel was ineffective for failing to object to the admission of prior bad act evidence that Welsh had inappropriately touched the female victim during a trip to Florida, where the victim's trial testimony belied this evidence.

6. Trial counsel was ineffective for failing to request a jury instruction pursuant to 18 Pa.C.S.A. §301 (requirement of voluntary act) and argue to the jury that Welsh's act at the time that he touched the female victim's genitals was not a voluntary act, where the victim's testimony purportedly established that this touching had occurred while Welsh was sleeping.

(Doc. 1 at 27-33).

Petitioner's first issue, that counsel failed to advance the claim that his two life sentences were illegal under Alleyne is completely unfounded, as the record relied upon herein reveals that the issue was raised by counsel in both Petitioner's direct appeal and in his PCRA petition. The underlying issue, itself, was found to lack merit. Thus, even if counsel failed to raise the issue, he could not be found ineffective for failing to raise a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Petitioner's second issue of ineffective assistance of counsel asserts that trial counsel failed to properly raise or litigate the alleged "staleness" of the information upon which the search warrant was issued for Welsh's

residence. Here, trial counsel did, in fact, raise and litigate the staleness issue and the Superior Court properly affirmed the PCRA court's conclusion that trial counsel was not ineffective, based on the following:

Next, concerning the warrant ineffectiveness claim, in its Opinion and Order, the PCRA court addressed this claim, and set forth the applicable law, as follows:

"Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant." **Commonwealth v. Janda**, 14 A.3d 147, 158 (Pa. Super. 2011) (citation omitted). In particular:

[A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, [] and probable [cause] may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

**Id**. at 158-[]59 [(citation omitted)]. Corroborative information need not be current for it to be properly considered by the magistrate[,] so long as it relates to prior conduct sufficiently similar to the acts in question. **Commonwealth v. Weidenmoyer**, 539 A.2d 1291, 1295 (Pa. Super. 1988). Additionally, "a showing that criminal activity is likely to have continued up to the time of the issuance of a warrant renders otherwise stale information viable." **Commonwealth v. Jones**, 668 A.2d 114, 118 (Pa. 1995).

In the case at bar, the victims reported the alleged abuse to authorities on June 11, 2007. Both victims alleged the abuse occurred over a course of years, and the August

29, 2007 search warrant application and affidavit of probable cause reflect this allegation.  One of the victims alleged [that] the abuse would occur when she stayed over at [Welsh's] house, which was at least once a week.  The description of the alleged abuse[,] within the search warrant application and affidavit of probable cause[,] sufficiently establishes an alleged course of criminal conduct by [Welsh].  The fact that some of the alleged abuse occurred years before the search warrant was issued is of no moment due to the establishment of an alleged course of criminal conduct.  After receiving the allegations of abuse from the victims, the authorities moved expeditiously to secure a search warrant.  The [c]ourt finds [that] the information underlying the issuance of the search warrant was not stale, and thus[,] the issue is not of arguable merit.  Therefore, [Welsh's] trial counsel was not ineffective for failing to f[u]rther develop the staleness issue during [Welsh's] case.

PCRA Court Opinion and Order, 2/21/17, at 3-4; **see also id**. at 1 (finding that "trial counsel raised the search warrant staleness issue several times during Welsh's case.").  As the PCRA court's cogent rationale is amply supported by the law and record, we affirm on this basis in rejecting Welsh's instant ineffectiveness claim.  **See id**. at 3-4.

(Doc. 15-1 at 52-54). The state court's determination that the underlying suppression claim was meritless and, therefore, trial counsel was not ineffective for failing to pursue it certainly constitutes a "reasonable argument that counsel satisfied Strickland's deferential standard." Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010) (counsel cannot be ineffective for failing to raise a meritless claim).

Petitioner's remaining four claims were determined waived by the Superior Court as follows:

> Concerning Welsh's remaining claims of ineffectiveness of counsel (i.e., the severance ineffectiveness claim, prosecutorial misconduct ineffectiveness claim, prior bad act ineffectiveness claim, and involuntary act ineffectiveness claim), Welsh waived these claims for his failure to raise them in his *pro se* PCRA Petition, or in PCRA counsel's Supplement to the Petition. **See Commonwealth v. Washington**, 927 A.2d 586, 601 (Pa. 2007) (stating that "[a]ny claim not raised in the PCRA petition is waived and not cognizable on appeal." (citing Pa.R.A.P. 302(a) (providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")).[13] Nevertheless, even if these claims were not waived, our review discloses that they would not entitle Welsh to relief, as they lack arguable merit. **See Spotz, supra**.

Accordingly, the state courts have not had the opportunity to assess prior counsel's effectiveness on Petitioner's four remaining issues, nor has a record been created to support any such findings. Accordingly, such claims are unexhausted and procedurally defaulted. Petitioner argues that he can overcome the procedural default of these claims under the authority of Martinez v. Ryan, 566 U.S. 1 (2010).  (Doc. 1).

---

[13] Furthermore, the fact that Welsh raised these claims in his Rule 1925(b) Concise Statement does not preserve them on appeal. **See Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1288 (Pa. Super. 2004) (en banc) (holding that "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.") (citation omitted).

Martinez v. Ryan, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, Martinez holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 9. To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," id. at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. Id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Workman v. Superintendent Albion SCI, 915 F.3d 928, 937-38 (3d Cir. 2019); see also Martinez, 566 U.S. at 13-14. A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that

post-conviction counsel's performance was deficient under the first prong of the Strickland v. Washington, 466 U.S. 668 (1984) standard. See Preston v. Sup't Graterford, SCI, 902 F.3d 365, 376 (3d Cir. 2018); see also Workman, 915 F.3d at 937–38. Satisfaction of the first Strickland prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. We now address Respondent's argument concerning the exhaustion and procedural default of Petitioner's four final claims of ineffective assistance of counsel.

Petitioner's third claim of ineffective assistance of counsel asserts that trial counsel was ineffective for failing to move for severance of Welsh's jury trial from that of his codefendant, where Welsh was ready to proceed to trial, but his codefendant's case was "stalled" due to a pre-trial appeal. (Doc. 1 at 30).

At Welsh's PCRA hearing, Petitioner's trial counsel testified to the facts surrounding this issue as follows:

> We raised the staleness of the warrant and tried to get everything suppressed based on the fact that we felt it was stale. And what we - - we filed the motions - - and I say we, myself and co-counsel, Gregory Moro, who was presenting Eugene Makara, both filed motions attacking the search warrant and we briefed them. And then the judge who was going to hear that had

> something else come up and I think we were trying to get evidence from various Children and Youth Services in regard to psychological records of children, there was an organization out of Allentown by the name of KidsPeace, they objected to us getting this information, even though we had gotten it from both Columbia County and Luzerne County, and there was an appeal to the Superior Court before the court could hold a hearing.

(Doc. 15-1 at 194). The record reflects that the KidsPeace organization filed its appeal of an Order granting the release of the medical records pursuant to a motion filed by Makara. (Doc. 15-1 at 202). The mental health records at issue in that appeal are those same records that both Welsh and Makara later sought permission to disseminate to prospective expert witnesses for the purpose of providing testimony during the trial regarding the victims' competency, propensity to lie and potential 'taint' as referenced by Welsh in his petition. (Doc. 1 at 26-27). Thus, Welsh clearly had an interest in the appeal which provided a strategic reason for awaiting its outcome rather than seeking severance at that point and proceeding separately to trial. As such, counsel's failure to move for severance was consistent with a sound trial strategy; accordingly, there was no deficient performance on trial counsel's part, and no ineffective assistance under Strickland, 466 U.S. 668 (1984). Consequently, the underlying, otherwise defaulted, ineffective assistance of counsel claim does not meet the "some merit" threshold, and Martinez is unavailable to excuse Welsh's procedural default of this claim.

To the extent that Petitioner attempts to establish cause for his default by claiming that collateral counsel provided ineffective assistance for failing to raise in the initial collateral review petition that trial counsel was ineffective for failing to move for severance of Welsh's jury trial from that of his codefendant, the narrow exception articulated in Martinez only applies to allegations concerning trial counsel's ineffectiveness, not claims alleging the ineffectiveness of appellate counsel or PCRA counsel. Davila v. Davis, 582 U.S. 521, 526 (2017) (declining to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel or PCRA counsel).

Petitioner's fourth claims is that PCRA counsel was ineffective for failing to investigate purported new evidence that the prosecuting attorney had engaged in misconduct by coaching and permitting the female victim to lie in her testimony, and by failing to request a court-appointed private investigator to locate and interview this victim's foster father, who also sexually abused the victim. (Doc. 1 at 31).   Petitioner's claim is without merit.

Petitioner had no right to counsel at his PCRA hearing under the Constitution or the AEDPA. See Werts v. Vaughn, 228 F.3d 178, 189 n.4 (3d Cir. 2000); 28 U.S.C. §2254(i). The Supreme Court of the United States has barred habeas relief for ineffective assistance of counsel during collateral

post-conviction proceedings. Martinez v. Ryan, 566 U.S. 1, 17 (2012) (citing §2254(i)). While §2254(i) prohibits a claim based directly on counsel's ineffectiveness in a collateral proceeding, Martinez permits a petitioner to show that ineffectiveness of counsel in the collateral proceeding ("PCRA counsel") was the cause of a procedurally defaulted ineffective assistance claim against trial counsel. Id. at 14.

Here, Petitioner does not claim that his PCRA counsel created a procedural default for any ineffective assistance of counsel claim. Rather, he argues that PCRA counsel was ineffective for failing to investigate the possibility of new evidence related to prosecutorial misconduct. In failing to connect the alleged ineffectiveness to a claim of ineffective trial counsel, Petitioner has made only a claim of PCRA counsel's ineffectiveness, and Martinez is inapplicable. Because Petitioner's standalone ineffectiveness of PCRA counsel claim is not cognizable as a basis for habeas relief, habeas review will be denied on this claim. This concept is codified by statute at 28 U.S.C. §2254(i), which expressly provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings....

Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). Thus, Welsh's standalone ineffectiveness of PCRA counsel claim is not cognizable as a basis for habeas relief.

Welsh's fifth ineffectiveness claim is that trial counsel was ineffective for failing to object to the admission of prior bad act evidence that Welsh had inappropriately touched the female victim during a trip to Florida, where the victim's trial testimony belied this evidence. (Doc. 1 at 32).

Petitioner raised this issue as trial court error in his direct appeal. (See Doc. 15-1 at 23-26). The record reflects that both defense counsel lodged objections to the proffered evidence and the trial court afforded defense counsel a period of time to submit briefs addressing the issue. (Doc. 15-1 at 83-92). At a subsequent hearing, the trial court acknowledged having received briefs from all counsel and issued an Order permitting introduction of the evidence. Id. Welsh's counsel then requested the trial court to certify the Order to permit an immediate interlocutory appeal which the court declined to do. Id. The trial court determined, in accordance with state rules of evidence that there was a basis for this evidence of prior contact between Petitioner and A.D., in that it established a common plan and scheme, or the *res gestae* of the full relationship between the children and the Defendants.

(Doc. 15-1 at 25). Additionally, the trial court limited the prejudicial effect of this evidence with a proper instruction. Id. As this Court has determined, supra, without a showing that this evidence undermined the fundamental fairness of his trial, Welsh's underlying claim is meritless. Accordingly, the Court finds that Petitioner's otherwise defaulted claim of ineffective assistance of trial counsel for failing to object to the introduction of such evidence, lacks merit, and Martinez does not excuse this procedural default.

Petitioner's final ineffectiveness claim is that trial counsel was ineffective for failing to request a jury instruction pursuant to 18 Pa.C.S.A. §301 (requirement of voluntary act) and argue to the jury that Welsh's act at the time that he touched the female victim's genitals was not a voluntary act, where the victim's testimony purportedly established that this touching had occurred while Welsh was sleeping. (Doc. 1 at 32). Specifically, Petitioner states that "trial counsel failed to argue to the jury that Petitioner's actions of touching A.D.'s vagina while sleeping was involuntary, and without intent, and as such could not be the basis for the related charges of aggravated indecent assault, indecent assault, and corruption of minors, and requesting a jury instruction regarding the involuntariness of Petitioner's actions, where A.D. testified that while sleeping at Petitioner's home in between Welsh and his co-defendants" and "Petitioner while sleeping moved and touched her

- 69 -

vagina at which time she moved and Petitioner's hand moved." Id. This Court finds no merit to Petitioner's claim.

As previously noted, the victim, A.D. was fifteen years old at the time of trial and related incidents of sexual abuse that began when she was eight years old. Early in her testimony, A.D. related that she was uncomfortable referring to her body parts by their specific names, so she referred to them generally as "Private parts" or "privates." (Doc. 15-1 at 151-167). She also identified the male "private part" as "Dick." Id.

A.D. was first asked to describe the circumstances when co-defendant Gene Makara touched her in ways she didn't like and she related that Gene would touch her private with his private, finger and mouth and these acts usually occurred in the bedroom with both Gene and Welsh ("Dean") present. Id. A.D. related that Gene or Dean would get a jar of stuff from a drawer on Dean's side of the bed and spread the stuff on Gene's private and her private. Id. She then related that she would lie on the bed, Gene would get on top of her, and Dean would help Gene put his private into A.D.'s private by holding Gene's private and putting it into A.D. Id. A.D. related that this happened an unknown number of times, but most of the times when she stayed overnight at Dean's residence. Id. A.D. testified that both Gene and

Dean repeatedly told her not to tell anyone because they would get into trouble. Id.

When specifically asked if Welsh ever touched her in a way, she didn't like other than helping Gene, A.D. related that, on one occasion, as she lay between Dean and Gene on the bed where she always slept when staying overnight at Dean's house, Dean put his hand on her private as **she** pretended to sleep. Id. (emphasis added). A.D. related that she moved, and Welsh then moved his hand. Id. At no time did A.D. testify that Welsh was asleep when he touched her private. Id.

On direct examination during trial, Welsh's counsel elicited the following testimony from Welsh:

Q:   You've heard testimony that you have at one time touched [A.D.'s] she called it her private, her vaginal area. Did you hear that testimony?

A:   Yes, I did.

Q:   Would you please tell the jury did that happen?

A:   **No, it did not happen. I did not touch anybody there.**

(Doc. 15-1 at 212) (emphasis added). Petitioner's testimony is a complete denial of the incident occurring. There is no assertion of involuntary or unknowing contact. In response to the subsequent series of questions, Petitioner denies all allegations of sexual abuse of A.D. by himself and

Makara. (Doc. 15-1 at 213-215). As such, the Court finds no evidentiary foundation for Welsh's claim that his touching A.D.'s vagina, was involuntary and that Welsh was asleep when he did so. Thus, there was no good faith basis for Welsh's trial counsel to have argued that Welsh's action was involuntary, negating the need for a jury instruction. Accordingly, trial counsel was not ineffective for declining to request a jury instruction pursuant to 18 Pa.C.S.A. §301 (requirement of voluntary act) and Martinez does not excuse the procedural default of this claim.

## IV.   Certificate of Appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" Tomlin v. Britton, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. §2253(c)). "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## V.   **Conclusion**

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 1, 2024**
20-0329-01